# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **PAULA ANN BURGESS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:11-CV-3858-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Paula Ann Burgess ("Burgess") seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and his application for supplemental security income ("SSI") under Title XVI of the Act. Burgess timely pursued and exhausted her administrative remedies available before the Commissioner. This case is ripe for review pursuant to 42 U.S.C. § 405(g) of the Act. The court has carefully considered the record and, for

the reasons which follow, finds that the decision of the Commissioner is due to be **AFFIRMED**.

## FACTS AND PROCEDURAL HISTORY

Burgess was a fifty-four (54) year old female at the time of her hearing before the Administrative Law Judge ("ALJ"). (R. at 34.) She has a high school education. (*Id.*) She has worked as a nursing assistant, home health aide, sitter/companion, domestic housekeeper, a sales attendant, and a fund raiser. (R. at 43–44.) Burgess has a history of hypertension and migraines. Burgess has also sought treatment for other ailments. However, all these other ailments have resolved with treatment. (R. at 21.)

Burgess applied for DIB and SSI on May 28, 2008, alleging disability beginning on January 1, 2002. (R. at 100.) A state agency initially denied her claim on October 17, 2008. (R. at 70.) Burgess requested a hearing before an ALJ, which occurred on April 5, 2010. (R. at 29.) At the hearing, Burgess amended her alleged onset date to May 28, 2008, and dismissed her Title II claim. (R. at 32.) The ALJ then heard testimony from Burgess and a vocational expert ("VE"). The ALJ denied Burgess's claim on June 4, 2010. (R. at 13.) Thereafter, Burgess filed this action.

## **STANDARD OF REVIEW**[1]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Id*.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI).  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145–46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for SSI and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[2]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] 12 months." 20 C.F.R. § 416.905(a).[3]  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

---

[2] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through February 14, 2013.

[3] The language of this section (as well as 20 C.F.R. § 416.920 cited below) was amended in 2012.  The text of the new provision became effective on August 24, 2012.  However, the textual changes in these provisions are irrelevant for purposes of this memorandum opinion.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

At Step One, the ALJ found that Burgess has not engaged in substantially gainful activity "since May 28, 2009, the amended alleged onset date."[4] (R. at 18.) At Step Two, the ALJ found that Burgess had the following severe impairments: hypertension and migraines. (R. at 18.) At Step Three, the ALJ found these impairments did not meet or medically equal a listed impairment. (R. at 18.)

Before proceeding to Step Four, the ALJ determined Burgess's residual functioning capacity ("RFC"). The ALJ found that Burgess could engage in "light work as defined in 20 C.F.R. § 416.967(b) except that she is restricted to lifting/carrying 20 pounds frequently or 30 pounds occasionally, and should have minimal contact with people and intense work pressures." (R. at 19.) The ALJ further added, "[t]he claimant is limited to standing two to three hours at a time, sitting two to three hours; and walking no more than three to four blocks." (R. at 19.) In making his RFC finding, the ALJ relied on Burgess's testimony and her medical records. The ALJ did not have the benefit of a medical source statement ("MSS") from a treating or non-treating physician.[5]

---

[4] Though not relevant here, the court assumes that the ALJ meant May 28, 2008, because that is the amended alleged onset date agreed to at the hearing. (R. at 32.)

[5] Medical source statements are "opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to

At Step Four, the ALJ found that Burgess cannot perform her past work. At Step Five, the ALJ found that given Burgess's "age education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. at 22.)

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574–75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574–75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838

---

perform work-related activities on a sustained basis. Medical source statements are to be based on the medical sources' records and examination of the individual; *i.e.*, their personal knowledge of the individual." SSR 96-5p.

(11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6]

Burgess makes two arguments.  First, she contends the ALJ erred in making an RFC assessment without a MSS.  Second, Burgess contends that the ALJ failed to consider her impairments in combination.  The court will address each in turn.

### A. The ALJ's RFC Assessment

A claimant's RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545).  In assessing a claimant's physical ability to work, the ALJ considers her ability to sit, stand, walk, lift, carry, push, pull, and perform other physical functions.  *See* 20 C.F.R. § 404.1545(b).  The ALJ must base his assessment on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  The Regulations require the ALJ to "consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."  Additionally, the ALJ must "consider descriptions and observations of your limitations from your impairment(s), including

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons." *Id.*

The ALJ will make the ultimate decision on what a claimant can and cannot do. *See* 20 C.F.R. § 404.1546(c).  However, the ALJ is not a medical expert and is not qualified to interpret raw medical data. *See Manso-Pizarro v. Sec'y of Health & Human Serv.*, 76 F.3d 15, 17 (1st Cir. 1996); *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D.Mass 1998).  "[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *See Manso-Pizarro*, 76 F.3d at 17.  Conversely, when the extent of a claimant's functional loss would not be apparent to a lay person, the ALJ cannot play doctor and guess at the claimant's ability to work. *See id.*

There is no bright line rule about when the ALJ must request a MSS.  In some cases, a treating physician's MSS is necessary. *See, e.g.*, *Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003). In others, it is not. *See, e.g.*, *Green v. Social Security Admin.*, 223 F. App'x. 915, 923 (11th Cir. 2007) (affirming ALJ's RFC assessment as supported by substantial evidence even though the ALJ discredited the only MSS in the record).  The ultimate question in

9

each case remains whether substantial evidence supports the ALJ's RFC assessment.

Here, substantial evidence supports the ALJ's RFC assessment despite the absence of a MSS. First, Burgess's medical records arguably show that she suffers little functional limitation from her impairments. The ALJ noted that Burgess has an intermittent treatment history for these impairments. (R. at 20.) For example, in May 2007, Burgess visited the emergency room complaining of vomiting and pain in her left arm. (R. at 274.) She admitted that she had been off her hypertension medication for two days. (R. at 284.) The emergency room physician diagnosed her with a hypertensive headache, hypertension, elevated glucose, and medical noncompliance. (R. at 284.) A doctor re-prescribed her prescriptions and sent her home. The records further reflect that Burgess visited the hospital when her blood pressure was high. However, these visits follow no set pattern. (*See* R. at 400, 406, 407, 421, 428, 429–31, 454, 466.)

Additionally, in October 2008, Burgess was hospitalized for chest pain. After testing, the hospital concluded that her heart size was normal and that she had no acute pulmonary or pleural disease. (R. at 337.) She was discharged in stable condition with a recommendation for "medical management of nonobstructive coronary disease." (R. at 368.) Significantly, during her stay,

Burgess's blood pressure was normal and her hypertension under control. (*See* R. at 371.)

Other medical records from 2008 to 2009 are unremarkable. (R. at 400, 406, 407, 421, 428, 429–31, 454, 466.) More important, these records suggests that Burgess's hypertension is well controlled with medication. (R. at 407, 421, 423, 428, 434, 436, 438, 454–55, 485, 488, 495, 501–04.) Based on these records, the ALJ reasonably concluded that "with appropriate treatment the claimant's symptoms and limitations [related to her hypertension] are controlled." And, if it is reasonable to conclude that Burgess's hypertension and migraines are controlled, it is also reasonable to conclude that these impairments impose little or no functional limitations on Burgess's ability to work. *See* 20 C.F.R. § 404.1545 ("Your residual functional capacity is the most you can still do despite your limitations.").

Furthermore, the ALJ considered Burgess's testimony about her functional abilities. From this testimony, the ALJ concluded that Burgess could perform light work with the following restrictions: she can carry 20 pounds frequently and 30 pounds occasionally; she should have minimal contact with people and intense work pressures; she is limited to standing two to three hours at a time; she is

limited to sitting two to three hours at a time; she is limited to walking no more than three to four blocks. (R. at 19.)

Burgess's testimony provides substantial evidence to support the ALJ's stated limitations. Burgess testified that she would have no problem lifting a bag of groceries or even light furniture. (R. at 39.) The ALJ then explicitly asked her how much she could comfortably lift. Burgess replied twenty-five (25) to thirty (30) pounds. (R. at 40.)

Regarding her ability to work with others and around intense work pressures, the ALJ's assessment is supported by the report of Dr. Cynthia A. Neville, a licensed psychologist. (R. at 291–295.) Dr. Neville reported that Burgess could understand, remember, and follow through with work instructions. (R. at 294.) She also said that Burgess's "ability to interact appropriately with coworkers and supervisors or to handle typical work pressures did not seem impaired at this time." (*Id.*)

More important, Burgess does not challenge the mental portion of the ALJ's RFC assessment. Pl.'s Br. at 8 ('[T]here exists no physician opinion as to the Plaintiff's multiple physical impairments."). Thus, Burgess essentially concedes that substantial evidence supports the mental portion of the RFC assessment.

Turning to Burgess's ability to sit or stand, Burgess testified that she could not stand up for more than two to three hours at a time. (R. at 37.) After that, her feet start to hurt and she can hardly walk. Conversely, Burgess testified that she does not have any problems with sitting. (R. at 39.) Additionally, the ALJ's hypothetical question to the VE reflects Burgess's need to alternate between sitting and standing. (R. at 45–46.)

Finally, the ALJ limited Burgess to walking no more than three to four blocks. This restriction is again consistent with Burgess's testimony and her Function Report. Burgess testified that she could walk no more than three or four blocks before fatigue and shortness of breath would require her to stop and rest. (R. at 38.) Similarly, in her Function Report, Burgess said she could walk several blocks before having to rest for two to three minutes. (R. at 178.)

This is not a case where the ALJ impermissibly played doctor and guessed at Burgess's ability to work. Instead, the ALJ used his commonsense and experience to weigh the evidence and reach a reasonable conclusion. Burgess's medical records and testimony provide sufficient support for the ALJ's RFC assessment. Therefore, the ALJ did not err in making that assessment.

**B.     Consideration of Burgess's Impairments**

The Regulations require an ALJ to consider a claimant's impairments in combination. *See* 20 C.F.R. § 416.923. Put another way, a claimant should be evaluated "as a whole person" and not as someone with "several hypothetical and isolated illnesses." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

Burgess contends the ALJ failed to consider her impairments in combination. (See Doc. 8 at 8.) However, the ALJ specifically stated that Burgess "does not have an impairment or combination of impairments that meets or medically equals . . . [a] listed impairment[]." (R. at 18.) Under binding Eleventh Circuit precedent, this statement alone is sufficient to show that the ALJ considered Burgess's impairments in combination. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224–25 (11th Cir. 2002); *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). Moreover, Burgess has not identified any impairment that the ALJ failed to consider. (*See* Doc. 8 at 8–12.) Nor does Burgess argue that, if the ALJ had considered other impairments, he would have reached a different result in this case. Therefore, this argument fails.

## IV.   CONCLUSION

For these reasons, the decision of the Commissioner is due to be **AFFIRMED**. A separate final judgment will be entered.

**DONE** and **ORDERED** this the 26th day of February, 2013.

                                                          /s/ VEHopkins
                                                          **VIRGINIA EMERSON HOPKINS**
                                                          United States District Judge